UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHRISTINE CLOVER and STEPHANIE
CORTES, et al.,

               Plaintiffs,                      10 Civ. 1702 (RPP)

       -against-                      **DECLARATION OF BRUCE E.
MENKEN IN SUPPORT OF
MOTION FOR ATTORNEY'S
FEES**

SHIVA REALTY OF MULBERRY, INC.,
et al.,

               Defendants.
------------------------------------------------------X

      BRUCE E. MENKEN, an attorney duly admitted to practice law in the State of New York and this court, the United States District Court for the Southern District of New York, declares the following:

      1. I am a member and principal of Beranbaum Menken LLP and represent the plaintiffs in the above referenced matter. I make and submit this declaration in support plaintiffs' motion for attorneys' fees and costs following the settlement of this matter. I am fully familiar with the facts hereinafter set forth.

<strong><u>Litigation History and Settlement Negotiations</u></strong>

      2. Plaintiffs Christine Clover and Stephanie Cortes are two transient and impoverished women who worked for defendants in the lower Manhattan Dunkin Donut shops they own and operate pursuant to a franchise agreement with Dunkin Donuts Franchising LLC.[1] Clover and

---

[1] Defendants own the franchises to three very busy Dunkin Donut shops located in the heart of Manhattan's financial district.

Cortes worked in excess of 40 hours in a week and defendants refused to pay them time and one-half their regular hourly rate in violation of the Fair Labor Standards Act and the New York Labor Law.

3. Plaintiffs commenced this action, styled as a putative class action, on March 3, 2010 to recover unpaid wages, liquidated damages, interest and attorneys' fees.

4. In order to avoid the more substantial legal exposure of a class action, defendants served plaintiffs with a Rule 68 offer on May 28, 2010. In the offer, defendants offered Clover $659.49 and Cortes $1,567.69, as well as interest, costs and reasonable attorneys' fees.

5. Clover and Cortes instructed me to reject defendants' Rule 68 offer because they believed they were owed more than what was being offered. Specifically, Clover and Cortes were not paid for their first week on the job, not paid for some time time before and after their shifts formally ended and not paid for meal breaks. Defendants failed to keep an accurate record of their employees' hours and often paid plaintiffs with checks that bounced. *See, Clover and Cortes Decl at par. 7-9 (Dkt. Entry No. 10).* Although not legally required to do so, plaintiffs also did not keep a complete record of the amount of unpaid overtime hours they worked.

6. Having obtained permission from the Court on May 27, 2010 to make a motion for conditional class certification without attending a pre-motion conference, plaintiffs filed their motion for conditional class certification on June 22, 2010.

7. On June 28, 2010, defendants moved to dismiss plaintiffs' complaint, claiming that plaintiffs' rejection of defendants' Rule 68 offer eliminates their personal stake in the case and renders the case moot.

8. Thereafter, on June 29, 2010 and July 2, 2010, I spoke with defendants' counsel about settling the case on behalf of Cortes because she had told me she was literally living on the street

and desperately needed money. Clover did not want to settle and compromise what she believed what was owed her. Defendants' counsel refused to settle the case unless both Cortes and Clover agreed to the settlement.

9. Having not reached a settlement, plaintiffs filed their opposition to defendants' motion to dismiss on July 28, 2010.

10. On August 12, 2010, the parties reached an agreement in principle to settle the case. Plaintiffs Clover and Cortes agreed to execute releases in consideration for payment of $2,000 each and the payment of attorneys' fees. They signed the Agreement and Release on August 18, 2010 and defendants signed the Agreement and Release and delivered the two $2,000 checks on September 14, 2010.[2] A copy of the Agreement and Release is attached as Exhibit A.

11. According to defendants' records, the $2,000 settlement amount paid to each plaintiff constituted more than full relief. Because Cortes, and then Clover, were unemployed and desperately in need of money, and did not have any documents or a consistent recollection of the specific amount of overtime hours they worked, the decision was made to settle the case.

### The Attorneys' Fees Negotiation

12. Consistent with paragraph 2 of the Agreement and Release, on September 3, 2010 I provided defense counsel with an explanatory cover letter and this firm's billing statement for work performed on this case. The total amount of attorneys' fees, inclusive of costs, is $22,310. A copy of the cover letter and billing statement is attached as Exhibit B.

13. After conveying several promises to respond, defense counsel Joseph Labuda called me in late September and "assumed that I would be willing to take a 25% haircut" on our firm's

---

[2]As evidenced by their delay in signing the Agreement and Release, and their repeated requests to adjourn this case, defendants stalled and delayed the prosecution of this case. *See* Dkt No. 26 and 27.

fees. I told him that we were conservative in our billing, exercised careful billing judgment and would not automatically agree to a 25% reduction in our fees. Noting that he had not received authorization from his clients, Mr. Labuda nevertheless then asked if our firm would accept $15,000 to settle the attorneys' fees. I told him to speak to his clients and I might be willing to accept *between* what we had billed ($22,310) and $15,000 if we did not have to file a motion. (Compelled to file a motion, we now seek payment for an additional $10,950 in fees incurred in working on the within motion papers and brief). *See Ex. C.*

14. Approximately one week later, on or about October 1, 2010, Mr. Labuda told me that I needed to file a motion and that his client *may* be willing to offer $5,000 to settle the attorneys' fees. He further claimed that his clients did not have any money.

15. Paragraph 2 of the Agreement and Release allows plaintiffs to apply to this Court for an award of attorneys' fees and costs should the parties be unable to reach an agreement. *See, Exhibit A.* Pursuant to the Stipulated Order of Dismissal in this case, this Court shall retain jurisdiction over any application for attorneys' fees. *Dkt. No. 28.* This motion ensues.

### Counsel's Background

16. I have had primary responsibility for litigating this case. In addition, an associate employed by our firm, Jennifer L. Smith, also worked on the case.

17. I have been practicing law for over twenty-three years. After graduating from Brooklyn Law School in 1986, I worked in the public sector for seven years. Since 1993, I have been affiliated with or a partner in various small New York City law firms primarily representing plaintiffs in employment and civil rights cases. In the last five years, I have spent nearly half of my time litigating class action cases. To date, I have successfully litigated and settled four class action civil rights cases (Kahler v. County of Rensselaer, 03 Civ. 1324 (TJM) (NDNY), Marriott

v. County of Montgomery, 426 F.Supp.2d 1(N.D.N.Y. 2006), McDaniel v. County of Schenectady, 04 Civ. 757 (GLS) (NDNY) and Mitchell v. County of Clinton, 06 Civ. 0254 (NAM)(DRH) )and two confidential wage and hour cases that settled for in excess of one million dollars.

18. In the McDaniel case, Northern District Judge Gary L. Sharpe approved a class action settlement that provided me an attorney fee of $450 per hour. In one of the confidential wage and hour cases that settled in excess of one million dollars, Magistrate Judge Roanne Mann approved a class action settlement that also provided me an attorney fee of $450 per hour. Approval of both of these settlements occurred in early 2009.

19. At present, I am a partner and principal of Beranbaum Menken LLP, a five attorney law firm concentrating in plaintiff-side employment law and civil rights litigation.

20. In connection with my work, I keep abreast of developments in the rapidly-changing labor and employment law area. I regularly attend workshops and seminars sponsored by the National Employment Lawyers Association (NELA) and its New York affiliate. On occasion, I give presentations concerning various areas of labor and employment law and, in fact, appeared as a panelist at a New York NELA conference as recently as last Friday, October 15, 2010.

21. I do not have a single billing rate because I represent clients of widely differing socioeconomic status. With respect to people who can afford my full fee, I currently charge $500 per hour. As was true in this case and most class action civil rights cases, litigation is invariably performed on a contingency basis. I am requesting as part of this fee an hourly rate of $500, the rate I could command in the relevant market place given my experience and expertise. See, In re Stock Exchanges Options Trading Litigation, 2006 WL 3498590 at *10 f.n. 6 (S.D.N.Y., Dec. 4, 2006) (Finding reasonable hourly rates for litigation partners in the Southern District to be

between $350 and $595 per hour in 2004 and 2006).

22. My associate, Jennifer L. Smith, is a 2002 graduate of New York University Law School. Upon graduating from NYU Law School, Ms. Smith worked as a Staff Attorney and then as a Supervisor at Texas RioGrande Legal Aid (TRGLA). At TRGLA, Ms. Smith litigated scores of multi-plaintiff cases on behalf of migrant and seasonal farm workers under the Fair Labor Standards Act and the Agricultural Workers Protection Act.

23. Ms. Smith joined our firm in January 2008 and is a senior associate. Her current case load consists of several putative wage and hour class action cases. Ms. Smith has been admitted to the bars of the State of New York, Southern District of New York and Eastern District of New York since 2008. This firm bills Ms. Smith's time at $300 per hour and I submit this is a reasonable fee to charge for her time considering she has been practicing law for nearly eight years. Id. (Reasonable hourly rates for associate attorneys in the Southern District are between $150 and $350).

## Time Records

24. I have annexed hereto as Exhibit B a listing of time expended on behalf of plaintiffs. It reflects time spent to date, excluding time spent on this motion. I did all of the work on this motion and the annexed Exhibit C memorializes the time I spent on it.[3] The billing statements are based on contemporaneous time records and notes. The time reflected in these records was time actually spent, in the exercise of our professional judgment. We were careful not to expend any unnecessary hours and not duplicate the work of others.

25. As indicated above, I am seeking fees for attorney work performed by me at the rate

---

[3] Should plaintiffs review defendants' opposition to this motion and find it necessary to submit a reply, plaintiffs seek the opportunity to seek compensation for the time spent on it, as well.

of $500 per hour and at the rate of $300 per hour for the work performed by Ms. Smith. These rates are the rates our firm bills hourly fee clients for my services and the services of Ms. Smith. After familiarizing myself with the rates of other attorneys with similar experience, I confirmed that these rates are the approximate true market value for our services. Attached as Exhibit D find the Declarations of Darnley D. Stewart and Laura Schnell, two New York City plaintiffs' employment lawyers, who attest to the reasonableness of the rates requested and the market value of this firm's services.

26. This firm represented the plaintiffs on a contingency basis. The retainer agreement provides for attorneys' fees in the amount of the greater of court-awarded attorneys' fees or one-third of the plaintiffs' recovery.

27. Were this firm limited to a contingent fee recovery without the possibility of court awarded attorneys' fees, we would have been compensated for my work and Ms. Smith's work in this case at the rate of approximately $26 per hour. Were this firm limited to the $5,000 fee half-heartedly proposed by defendants' counsel, we would be compensated at the rate of $96.80 per hour. This firm would not be able to represent poorly-paid workers under these circumstances and I know of no other plaintiffs' employment lawyer experienced in federal litigation in New York City who would do so. As a result, such persons as the plaintiffs in this case (i.e., donut shop workers) would be unable to retain competent counsel, which would operate to reward defendants who blatantly underpaid its workers.

28. Also annexed and a part of Exhibit B is a listing of disbursements expended on behalf of the plaintiffs. As indicated in my September 3, 2010 cover letter to defense counsel, our firm did not bill for on-line legal research and photocopying. The sole costs incurred were for filing the case and for service of process and total $635.

29. I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
October 19, 2010

_____
Bruce E. Menken